IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-0957-WJM-KLM

JOE HAND PROMOTIONS, INC.,

　　Plaintiff,

v.

2012 LARIMER ST. LLC, d/b/a LARIMER BEER HALL, and
JONATHAN WEAVER,

　　Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment ("Motion"). (ECF No. 19.) For the following reasons, the Motion is granted.

## I. BACKGROUND

**A.　Allegations in the Amended Complaint[1]**

The Court takes the following facts from Plaintiff's Amended Complaint (ECF No. 7) which, as a result of Defendants 2012 Larimer St. LLC and Jonathan Weaver's (jointly, "Defendants") default, are deemed admitted.

Plaintiff is a corporation that specializes in distributing and licensing premier sporting events to commercial locations such as bars, restaurants, lounges, clubhouses, and similar establishments. (¶¶ 1, 7.) Defendant 2012 Larimer St. LLC operates the establishment known as Larimer Beer Hall located at 2012 Larimer Street, Denver, CO

---

[1] Citations to (¶ __), without more, are references to the Amended Complaint. (ECF No. 7.)

80205 (the "Establishment"). (¶ 2.) On April 7, 2019, Defendant Jonathan Weaver was an officer, director, shareholder, member, and/or principal of the entity owning and operating the Establishment, had a right and ability to supervise the activities of the Establishment, and had an obvious and direct financial interest in the activities of the Establishment. (¶ 3.)

Plaintiff held the exclusive commercial distribution rights to the broadcast of *WWE WrestleMania 35*, including all bouts and commentary, telecast nationwide on April 7, 2019 (the "Program"). (¶ 1.) Plaintiff entered into a Distributorship Agreement, granting it the right to license and distribute the Program to commercial establishments throughout the United States. (¶ 8.) The Program broadcast originated via satellite uplink and was retransmitted interstate to cable systems and satellite television companies via satellite signal. (*Id.*)

Plaintiff entered into subsequent agreements with various commercial establishments in Colorado that allowed them to exhibit the Program to their patrons in exchange for a fee. (¶ 9.) In consideration of these agreements, Plaintiff spent a significant amount of money to market, advertise, promote, administer, and transmit the Program to those Colorado establishments. (*Id.*)

Although Defendants could have purchased authorization to exhibit the Program from Plaintiff, they chose not to contract with or pay a fee to Plaintiff to obtain the proper license or authorization to exhibit the Program. (¶ 10.) Plaintiff never gave Defendants license, permission, or authority to receive and exhibit the Program in their establishment. (*Id.*) Nonetheless, by unauthorized satellite transmission or receipt over a cable system, Defendants willfully intercepted or received the interstate

2

communication of the Program.  (¶ 11.)  Then, Defendants unlawfully transmitted (or assisted in doing so) the communication and published it to patrons in their establishment.  (*Id.*)  Thus, without authorization from Plaintiff, Defendants exhibited the Program to patrons in their establishment.  (¶ 12.)

In doing so, Defendants pirated Plaintiff's licensed exhibition of the Program and infringed on Plaintiff's exclusive rights while avoiding proper authorization and payment to Plaintiff.  (¶ 13.)  Such actions were committed willfully and with the intent to secure a commercial advantage and private financial gain.  (*Id.*)  At the time of the wrongful conduct described, Defendants' agents, servants and employees were in fact their agents, servants, and employees and were acting withing the scope of their employment and authority.  (¶ 14.)

**B.    Procedural History**

Plaintiff filed its initial complaint on April 6, 2020.  (ECF No. 1.)  On July 15, 2020, Plaintiff filed the First Amended Complaint, alleging one count of "Satellite Piracy/Cable Piracy" in violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 (generally referred to as "Satellite Piracy"), or alternatively 47 U.S.C. § 553 (generally referred to as "Cable Piracy").  (ECF No. 7 at 4.)  Plaintiff requests that the Court: (1) enter judgment in favor of Plaintiff and against Defendants for statutory damages of up to the maximum amount of $110,000 for the willful violation of 47 U.S.C. § 605, or alternatively, for statutory damages of up to the maximum amount of $60,000 for the willful violation of 47 U.S.C. § 553; (2) award Plaintiff its attorney's fees, interest, and costs of suit under 47 U.S.C. § 605(e)(3)(B)(iii) or, alternatively, pursuant to § 553(c)(2)(C); and (3) such other relief to which Plaintiff may be entitled.  (*Id.* at 4–5.)

Defendants were served with a copy of the Summons and Complaint in this case

on July 27, 2020. (ECF No. 15.) Thus, Defendant was required to file an answer no later than August 17, 2020 under Federal Rule of Civil Procedure 12(a)(1)(A)(i). After Defendants failed to appear or otherwise defend the lawsuit, Plaintiff obtained the Clerk's Entry of Default on September 3, 2020. (ECF No. 17.) On October 9, 2020, United States Magistrate Judge Kristen L. Mix entered an order directing Plaintiff to file a motion for default judgment by October 16, 2020. (ECF No. 18.) In accordance with Judge Mix's order, Plaintiff filed the Motion on October 16, 2020. (ECF No. 19.) As of this date, Defendants have not filed an answer or any other responsive pleading in this matter.

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party," in order to avoid further delay and uncertainty as to the diligent party's rights. *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

## III.     ANALYSIS

Before granting a motion for default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are

4

admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant.  *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").

**A.     Jurisdiction**

The Court finds that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim under a federal statute.  Additionally, the Court may exercise personal jurisdiction over Defendants because they operate the Larimer Beer Hall in Denver, Colorado and the alleged statutory violation took place in Colorado.  (¶¶ 2–3.)  *See Dennis Garberg & Assoc. v. Pack–Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997) (plaintiff need only make a prima facie showing of personal jurisdiction if the motion for default judgment is decided only on the basis of the parties' affidavits and other written materials).

**B.     Substantive Liability**

Plaintiff asserts violations of 47 U.S.C. §§ 553 and 605.  Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).  Likewise, § 605 states:

> No person not being authorized by the sender shall intercept
> any radio communication and divulge or publish the
> existence, contents, substance, purport, effect, or meaning
> of such intercepted communication to any person.  No
> person not being entitled thereto shall receive or assist in
> receiving any interstate or foreign communication by radio
> and use such communication (or any information therein

5

> contained) for his own benefit or for the benefit of another
> not entitled thereto.

42 U.S.C. § 605(a)(6).

Plaintiff alleges in its First Amended Complaint that it had the exclusive right to broadcast the Program on April 7, 2019. (¶¶ 1, 8, 13.) Plaintiff further asserts that, without obtaining permission from Plaintiff and "by unauthorized satellite transmission or . . . unauthorized receipt over a cable system," Defendants "willfully intercepted or received the interstate communication of the Program" and "then unlawfully transmitted, divulged and published said communication . . . to patrons" at the Larimer Beer Hall in Denver, Colorado. (*Id.* ¶¶ 2(d), 11.)

Because Defendants could only have intercepted the broadcast through illegal means, *see id.* ¶ 10 (noting that Plaintiff never gave Defendants "license, permission or authority to receive and exhibit the Program"); ECF No. 19-2 ¶ 9 (affidavit by Joe Hand, Jr., President of Plaintiff, stating that plaintiff's programming "cannot be mistakenly, innocently, or accidentally intercepted"), the Court finds Plaintiff's allegations sufficient to establish liability under §§ 553 and 605. *See Joe Hand Promotions, Inc. v. Purple Pig, LLC,* 2018 WL 4360538, at *2 (D. Colo. Sept. 13, 2018) (finding that plaintiff met the statutory requirements for liability under §§ 553 and 605); *J & J Sports Productions, Inc. v. Twiss*, 2012 WL 1059990, at *3–4 (D. Colo. March 2, 2012) (finding that plaintiff had met the statutory requirements for liability under §§ 553 and 605 where defendant exhibited the broadcast without authorization, defendant could only have intercepted the broadcast by illegal means, and the broadcast was transmitted by cable and satellite), *recommendation adopted by* 2012 WL 1060047 (D. Colo. Mar. 29, 2012); *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1183 (D. Colo. 2008) (finding

6

allegations sufficient to establish violations of 47 U.S.C. §§ 553 and 605 where plaintiff alleged that defendants were not authorized to broadcast the program in their restaurant, the broadcast could only have been accomplished through illegal means, and the services intercepted or received were also distributed via cable).

**C.     Damages**

Although Plaintiff has established liability under both § 553 and § 605, Plaintiff may only recover under one section. *See Gutierrez*, 544 F. Supp. 2d at 1184 (stating that "recovery under both section 553 and section 605 is improper"). Plaintiff elects to recover damages under § 605. (ECF No. 19-1 at 5.)

Section 605 allows recovery of statutory damages in an amount "not less than $1,000 or more than $10,000" for each violation of the statute. 47 U.S.C. § 605(e)(3)(C)(i)(II). "[M]ost cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Gutierrez*, 544 F. Supp. 2d at 1184 (quoting *Garden City Boxing Club v. Perez*, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006)). Accordingly, the Court finds that Defendants' alleged broadcast of the Program on April 7, 2019 constitutes one violation of § 605(a).

Plaintiff seeks $10,000 in statutory damages for that violation. (ECF No. 19-1 at 5.) In assessing the reasonableness of that amount, the Court will consider the licensing fee that Defendants would have paid based on the potential occupancy of the space, any cover charge paid by the patrons in attendance on the night of the Program, and any profits associated with the purchase of food and drink during the Program. *See J & J Sports Productions, Inc. v. Valdovines*, 2012 WL 3758841, at *3 (D. Colo. Aug. 28, 2012) (considering both licensing fee and cover charge in determining statutory damages); *Twiss*, 2012 WL 1059990, at *5–6 (recommending award of maximum

7

amount of statutory damages based on licensing fee, cover charge, and "the presumed profit associated with the patronage of 90 people (in terms of food and drink)"). The Court is also cognizant that "unauthorized access to [programming] reduces demand and depresses the prices that plaintiff can charge for sublicenses." *Twiss*, 2012 WL 1059990, at *6 n.5. The amount of statutory damages should be roughly proportional to the loss suffered, *DIRECTV, LLC v. Taylor*, 2014 WL 3373448, at *3 (D. Colo. July 10, 2014) (quoting *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001)), and Plaintiff has the burden of showing that it is entitled to any award greater than the statutory minimum, *id.*

Here, Plaintiff states that the commercial subscription fee would have been $7,380 for a maximum fire code occupancy of between 201 and 250 persons. (*See* ECF No. 19-1 at 10; ECF No. 19-2 ¶ 7; ECF No. 19-4 (2019 Rate Card for DirecTV Pricing for subscription only packages based on fire code occupancy rates); *see also* ECF No. 19-5 at 2 (affidavit of Ryan Zahn of Metro Private Investigations expressing opinion that maximum occupancy of Larimer Beer Hall is 175–225 people).) Plaintiff also presents evidence that there was no cover charge, the Program was exhibited on nine 56-inch television screens, and there were approximately fifty patrons in the establishment at the time of the Program. (ECF No. 19-5 at 1.) Finally, Plaintiff asserts "damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission" of the event as a result of Defendants' unlawful conduct. (ECF No. 19-1 at 8.) Considering these factors and the awards in other cases, *see, e.g., Zuffa LLC v. Gonzalez*, 2017 WL 6016403, at *3 (D. Colo. Nov. 14, 2017) (awarding $5,000 in statutory damages where the sublicensing fee would have

8

cost $2,250, defendants exhibited the broadcast on five of their six televisions, and the occupancy of the restaurant was between 101 and 200 people); *Taylor*, 2014 WL 3373448, at *3 (awarding $1,500 where plaintiff had not offered any evidence of the "profit that it was deprived of" and thus had failed to show an entitlement to damages significantly greater than the statutory minimum); *J & J Sports Productions, Inc. v. Rivas*, 2012 WL 3544834, at *2 (N.D. Okla. Aug. 16, 2012) (finding $2,500 to be an appropriate award of statutory damages where the sublicense fee would have been $2,200, no cover fee was charged, there were no more than fifteen patrons in the restaurant at the time of the broadcast, and there was no evidence of a financial benefit to the defendant or of repeated violations of the statute), the Court finds that $10,000 in statutory damages constitutes appropriate compensation for Defendants' violation of § 605(a).

In addition to statutory damages, Plaintiff requests enhanced damages of $30,000 (ECF No. 19-1 at 10) pursuant to Section 605(e)(3)(C)(ii), which states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [Section 605(a)].

Courts typically consider the following factors in determining whether a defendant's willful conduct calls for enhanced damages: repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks. *See Taylor*, 2014 WL 3373448, at *3 (citing *Gutierrez*, 544 F. Supp. 2d at 1185).

Here, Plaintiff has provided evidence showing that Defendants willfully used the Program, which they illegally accessed, for financial gain and that they advertised the Program. (ECF No. 19-2 ¶ 15; ECF No. 19-7 at 2.) Although Plaintiff does not adduce any evidence indicating that Defendants had previously committed such a violation or charged inflated prices for food or drink during the Program, the Court believes that an enhanced award is appropriate for the purpose of deterring any future violation. *See See Taylor*, 2014 WL 3373448, at *3 (citing *Gutierrez*, 544 F. Supp. 2d at 1185). While awarding the maximum amount of $100,000 in this case would be grossly excessive, the Court believes, based on the record in this case, than an enhanced award in the requested amount of $30,000 is appropriate. Such an award, treble the statutory damages, adequately addresses the willfulness of Defendants' illegal conduct. *See Purple Pig, LLC*, 2018 WL 4360538, at *4 (awarding enhanced damages that were treble the statutory damages); *Taylor*, 2014 WL 3373448, at *3 (same); *Gutierrez*, 544 F. Supp. 2d at 1185 (same); *Twiss*, 2012 WL 1059990, at *7 (awarding enhanced damages that were slightly over treble the statutory damages).

**D.     Attorneys' Fees and Costs**

As the prevailing party under 47 U.S.C. § 605, Plaintiff is entitled to its reasonable attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). By affidavit, Plaintiff's counsel requests that the Court permit it to file a fee application for attorneys' fees from Defendants. (ECF No. 19-6 at 2.) In addition, Plaintiff's counsel states that it incurred costs of $400 to file the action and $235 to effectuate service in this action. (*Id.*)

The Court will permit Plaintiff to file a fee application. Further, the Court finds these costs reasonable and will award them to Plaintiff. *Taylor*, 2014 WL 3373448, at

*4 (awarding $1,005 for filing fees and service of process).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. Plaintiff's Motion for Default Judgment (ECF No. 19) is GRANTED;

2. The Clerk shall enter DEFAULT JUDGMENT in favor of Plaintiff and against Defendants and award statutory damages in the amount of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II); enhanced damages in the amount of $30,000 under 47 U.S.C. § 605(e)(3)(C)(ii); and $635 in costs under 47 U.S.C. § 605(e)(3)(B)(iii), for a total award of $40,635;[2] and

3. By **July 21, 2021**, Plaintiff shall submit all documentation required by rule and applicable case law of the reasonable amount of attorneys' fees expended in this matter and in support of a separate motion for same.

Dated this 12th day of July, 2021.

BY THE COURT:

William J. Martinez
United States District Judge

---

[2] In Plaintiff's brief, it requests a total damages award of $42,135, but this amount appears incorrect based on the damages requested in the brief and now awarded by the Court. (ECF No. 19-1 at 14.)